J-S43043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MICHAEL TYMAN | : | |
| | : | |
| Appellant | : | No. 309 WDA 2020 |

Appeal from the Judgment of Sentence Entered February 13, 2020
In the Court of Common Pleas of McKean County
Criminal Division at No(s): CP-42-CR-0000637-2015

BEFORE: SHOGAN, J., STABILE, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED FEBRUARY 03, 2021**

Appellant, Michael Tyman, appeals from the judgment of sentence entered in the McKean County Court of Common Pleas, following his jury trial convictions for two counts of disorderly conduct and one count each of simple assault and harassment.[1]  We affirm.

In its opinion, the trial court set forth the relevant facts of this case as follows:

> [Appellant's] then girlfriend, [Victim], testified that she and [Appellant] were residing together at the Hotel Holly in Bradford, PA, on November 28, 2015.  [Victim] testified that [Appellant] had been drinking at home and then went to a bar.  When [Appellant] came home later in the evening he was very upset and angry.
>
> A.    Like I said, [Appellant] was angry about something he had heard and he just decided to attack

---

[1] 18 Pa.C.S.A. §§ 5503(a)(1), (a)(2); 2701(a)(1); 2709(a)(1), respectively.

me.

 Q. Okay. And when you said "He attacked you" do you remember how he attacked you?

 A. Well he threw the glass down and then he picked up a wine bottle that I have that I filled with water because the water was shut off in the building so I saved some. Then [Appellant] just started hitting me over the head with it so I crouched down and I blocked myself.

[Victim] testified that she had an open wound from being hit in the head with the wine bottle and she was bleeding.

\* \* \*

[W]itness Gerald Devitt testified that he lived in an apartment next to [Appellant] and [V]ictim's apartment. He heard a fight going on inside [Appellant's] apartment. Later he heard [Appellant] say [he] was going to get a shotgun and shoot the victim; and, he observed him strike her.

 Q. Okay. And leading up to that incident how did that come about what was going on?

 A. There was a fight going on next door.

 Q. Okay. And how did you know there was a fight going on next door?

 A. We could hear it from my room and then [Appellant] came over to my room and asked me to go to his room.

 Q. Okay. Now when you said you could hear it what—I mean I know it's hard when you're listening through another wall but can you tell us like what sort of sounds you heard?

 A. Just loud [thumping] and [banging] like stuff was being tossed around or broke.

\* \* \*

Q.     Okay.  And when you got into the room what did you notice?

A.     The room was trashed.  It was a mess.  There was a table that was knocked over, there was stuff all over the floor and it was a mess.

Q.     Okay.  And at that time did you see the victim in this case…?

A.     Yes.

Q.     And what was she doing?

A.     She was crouching sitting down with her feet up on—I don't know what was behind her but she had her hands like this (indicating).

Q.     Okay.

A.     Sitting on the floor.

Q.     Okay.  So she looked—so—after you saw her like that what happened at that point?

A.     I asked [Appellant] what happened, what—you know what's going on and he didn't really say anything to me he kind of leaned over to her mentioned something about getting my shotgun and was [going to] kill her and called her some really bad names then kind of popped her.

Q.     Okay.

A.     He leaned over smacked her or hit her.

Q.     Okay.  Now do you know if that was closed fist or open fist?

A.     No sir, I couldn't tell and at that time I grabbed ahold of him and threw him out into the hallway.

Q.     Okay.   And at that point you said you had

- 3 -

observed [Victim]?

A.    Yes.

Q.    Could you see any visible injuries on her or anything like that?

A.    Her hair was messed up and she had blood on her forehead.

Q.    Okay.  So there was some blood there?

A.    Yeah.

Q.    Did she look like she had just been in some sort of physical altercation?

A.    Yeah.

(Trial Court Opinion, filed May 6, 2020, at 3-5) (internal record citations omitted).

Procedurally, a jury convicted Appellant of the above-mentioned offenses on May 23, 2016.  On June 16, 2016, the court issued a bench warrant after Appellant absconded and failed to appear for sentencing.  On February 7, 2020, Appellant was apprehended, and the court scheduled a new sentencing date.  The court sentenced Appellant on February 13, 2020, to an aggregate sixty (60) days to twenty-three and one half (23½) months' imprisonment.  Appellant did not file post-sentence motions.  Appellant filed a timely notice of appeal on February 26, 2020.  On February 28, 2020, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and Appellant timely complied.

Appellant raises the following issues for our review:

Whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to support all of the elements of the offense at count 1[, simple assault].

Whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to support all of the elements of the offense at count 2[, disorderly conduct—engage in fighting].

Whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to support all of the elements of the offense at count 3[, disorderly conduct—unreasonable noise].

Whether the trial court abused its discretion upon review of the record when reviewing the weight of the evidence for counts 1, 2, and 3.

(Appellant's Brief at 5).

In his first issue, Appellant alleges that Victim's testimony was inconsistent and not credible. Appellant contends Victim's trial testimony contradicted her preliminary hearing testimony. Further, Appellant avers that the jury should have credited his testimony instead of Victim's account regarding the manner in which she sustained her injuries. Appellant concludes the Commonwealth presented insufficient evidence to sustain his conviction for simple assault under Section 2701(a)(1). We disagree.

Initially, an argument that the finder of fact should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence. *Commonwealth v. W.H.M.*,

932 A.2d 155, 160 (Pa.Super. 2007) (explaining claim that jury should have believed appellant's version of events rather than that of victim goes to weight, not sufficiency of evidence); **Commonwealth v. Wilson**, 825 A.2d 710, 713–14 (Pa.Super. 2003) (concluding sufficiency of evidence does not include assessment of credibility of testimony; such claim goes to weight of evidence); **Commonwealth v. Gaskins**, 692 A.2d 224, 227 (Pa.Super. 1997) (stating credibility determinations are made by finder of fact and challenges to those determinations go to weight, not sufficiency of evidence).

Instantly, Appellant's contention that Victim's testimony was inconsistent, and that the jury should have credited his testimony rather than her testimony, is not a proper challenge to the sufficiency of the evidence; rather, this claim implicates the weight of the evidence. **See W.H.M.**, **supra**; **Wilson**, **supra**; **Gaskins**, **supra**. Because Appellant did not preserve a challenge to the weight of the evidence before the trial court, however, that claim is waived on appeal. **See** Pa.R.Crim.P. 607(A) (explaining claim that verdict is against weight of evidence shall be raised with trial judge in motion for new trial orally before sentencing, by written motion before sentencing, or in post-sentence motion); **Wilson, supra** (explaining challenge to weight of evidence is waived if not raised before trial court).

Further, even if we could construe Appellant's first issue as a challenge to the sufficiency of the evidence, it would not merit relief. When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Jackson**, 215 A.3d 972, 980 (Pa.Super. 2019) (quoting

**Commonwealth v. Hansley**, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal*

*denied*, 613 Pa. 642, 32 A.3d 1275 (2011)).

The Pennsylvania Crimes Code defines simple assault, in relevant part, as follows:

**§ 2701.  Simple assault**

**(a)   Offense defined**.—Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

> (1)    attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

> \*     \*     \*

18 Pa.C.S.A § 2701(a)(1).  "Bodily injury" is defined as the "[i]mpairment of

physical condition or substantial pain." 18 Pa.C.S.A. § 2301.

Here, Appellant's act of striking Victim repeatedly in the head with a wine bottle resulted in her sustaining "bodily injury." ***See id.*** Victim sustained an open wound that bled, and caused her pain the following day. (N.T. Trial, 5/23/16, at 69). Viewed in the light most favorable to the Commonwealth as verdict-winner, the Commonwealth presented sufficient evidence to sustain Appellant's conviction for simple assault under Section 2701(a)(1). ***See*** 18 Pa.C.S.A § 2701(a)(1); ***Jackson, supra***. Thus, Appellant's first issue on appeal merits no relief.

In his second and third issues, Appellant argues that he did not engage in fighting or threatening, or in a violent or tumultuous behavior. Appellant also asserts that this incident occurred within his apartment, and not in a public location. Appellant concludes the Commonwealth presented insufficient evidence to sustain his convictions for disorderly conduct under Sections 5503(a)(1) and (a)(2). We disagree.

The Pennsylvania Crimes Code defines disorderly conduct, in relevant part, as follows:

> **§ 5503. Disorderly conduct**
>
> **(a) Offense defined**.—A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> > (1) engages in fighting or threatening, or in violent or tumultuous behavior;

      (2)    makes unreasonable noise;

\*     \*     \*

18 Pa.C.S.A. § 5503(a)(1), (2). The definition section of the statute defines "public" as follows:

> As used in this section, the word "public" means affecting or likely to affect persons in a place to which the public or a substantial group has access; among the places included are highways, transport facilities, schools, prisons, **apartment houses**, places of business or amusement, any neighborhood, or any premises which are open to the public.

18 Pa.C.S.A. § 5503(c) (emphasis added).

Instantly, the evidence shows Appellant struck Victim in the head with a wine bottle. Appellant also yelled at Victim "I'm [going to] kill you," and he mentioned that he intended to get [his] shotgun. (**See** N.T. Trial at 80-81). Appellant's actions satisfy both the fighting and threatening behaviors as required under Section 5503(a)(1). **See** 18 Pa.C.S.A. § 5503(a)(1).

Additionally, Appellant's assault on Victim involved "loud thumping" and the "banging" of objects being thrown and broken in his apartment. (**See** N.T. Trial at 78, 83). Appellant's next-door neighbor heard those loud noises through his wall. (**Id.** at 78, 83). Thus, Appellant's conduct caused a "public inconvenience" that affected his neighbor. Further, Appellant's apartment constitutes a "public" place. **See** 18 Pa.C.S.A. § 5503(c). Therefore, the Commonwealth presented sufficient evidence to sustain Appellant's convictions under Section 5503. **See Jackson, supra**.

In his fourth issue, Appellant concedes he has not properly preserved a

challenge to the weight of the evidence, and essentially abandons this claim. (*See* Appellant's Brief at 13-14).  We agree that Appellant's weight claim is waived for failure to preserve it in the trial court.  *See* Pa.R.Crim.P. 607(A); *Wilson, supra*.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  2/3/2021